STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ANTHONY JOHN LA PORTE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued January 23, 1973—Decided March 5, 1973.

*Mr. Ralph J. Jabbour*, Assistant Prosecutor, argued the cause for appellant (*Mr. Joseph P. Lordi*, Essex County Prosecutor, attorney).

*Mrs. Rosemary K. Reavey*, Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Mr. Stanley C. Van Ness*, Public Defender, attorney).

The opinion of the Court was delivered by

SULLIVAN, P. J. A. D., Temporarily Assigned. Following a jury trial, defendant was convicted of the armed robbery of David W. Leuice, an employee of the American Finance Corporation in Belleville. On appeal the Appellate Division, although it found overwhelming evidence of defendant's guilt of such charge, reversed his conviction on the ground that "the jurors could not avoid being prejudiced" by the improper disclosure during trial that (1) defendant was wanted for a holdup and robbery in Roselle Park, and (2) defendant had been arrested for the crime of embezzlement from a former employer. We granted the State's petition for certification, 62 *N. J.* 68 (1972). We also granted defendant's cross-petition for certification to review his contention, rejected by the trial court and the Appellate Division, that the warrantless search of his car and seizure of evidence therefrom was in violation of defendant's constitutional rights.

On September 4, 1970, the American Finance Corporation's branch office on Washington Avenue, Belleville, was held up by a lone gunman carrying a briefcase. There were two employees in the office at the time, David W. Leuice and Elizabeth Olejnik. Leuice recognized the man as having been there the night before inquiring about a loan. The man remained in the office about fifteen minutes during the course of the robbery. After he left, the police were called and given a detailed description of him and his attire, which included dark sunglasses. The get-away vehicle was described as a 1967–1970 car, dark blue with a black top, possibly an Oldsmobile or General Motors' make. The weapon used during the robbery was described as a .38 caliber revolver.

The Belleville police had little immediate success in solving the robbery. The two employees were shown several hundred photographs at the Essex County Bureau of Identification, but were unable to make an identification.

The case was broken on September 30, 1970 as the result of a police teletype from Roselle Park that one Anthony John LaPorte was wanted there for a holdup and robbery, and to be on the lookout for his car which was described as a 1970 two-door blue Pontiac, license KRU400. The teletype was received at about 5:00 P.M. At about 11:30 P.M. the car was located parked in front of 31 Honiss Street, in Belleville. Two detectives from the Belleville Police Department, together with two police officers from Roselle Park who had a warrant for defendant's arrest for armed robbery, went to the address, found defendant there and placed him under arrest. His car was impounded and towed to police headquarters where it was searched and a .38 caliber revolver was found in the glove compartment. Also recovered from the back seat and floor of the car were a pair of sunglasses and a briefcase, as well as items related to the Roselle Park holdup. After the arrest, one of the Belleville detectives noticed the resemblance of LaPorte to the description of the robber in the American Finance holdup. David Leuice was reached by telephone and came to police head-

quarters. There he "instantaneously" recognized LaPorte as the man who had committed the American Finance robbery.

At trial both Leuice and Olejnik positively identified defendant as the robber. Leuice also identified pictures of defendant's car as similar to the get-away vehicle. He also identified the revolver and briefcase found in defendant's car, and a holster and jacket found in defendant's apartment, as the items worn or used by the robber at the time the holdup was committed. Without detailing all the incriminating evidence, we are satisfied that the proofs of defendant's guilt are convincing.

We first consider defendant's contention, raised on a motion to suppress, that the warrantless search of his automobile at police headquarters following his arrest was illegal. We find this contention to lack merit. The search was not in connection with the American Finance holdup, but rather grew out of defendant's arrest on a charge of armed robbery committed in Roselle Park. The police had the right to seize defendant's automobile since it had been reported as an instrumentality used in the robbery. The search of it was clearly justified since the officers had probable cause to believe that it contained evidence of the Roselle Park armed robbery (as it actually did). *Chambers v. Maroney,* 399 *U. S.* 42, 90 S. Ct. 1975, 26 *L. Ed.* 2d 419 (1970). The vehicle was mobile. See *State v. Smith,* 113 *N. J. Super.* 120 (App. Div.), *certif. den.* 59 *N. J.* 293 (1971). Had the police not seized it it might have been moved and whatever evidence it contained lost. (Defendant testified that his ex-wife had a duplicate key to the car and drove it quite a bit.) Since the police had probable cause to search defendant's automobile, and the circumstances were such that it was not practicable to secure a warrant, their actions in seizing the vehicle, bringing it to police headquarters and searching it there, were not unreasonable. As stated in *Chambers, supra,* 399 *U. S.* at 52, 90 S. Ct. at 1981, 26 *L. Ed.* 2d at 428, for constitutional purposes there is "no difference be-

tween on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

*Coolidge v. New Hampshire,* 403 *U. S.* 443, 91 S. Ct. 2022, 29 *L. Ed.* 2d 564 (1971), relied on by defendant, cannot be interpreted as a modification of *Chambers, supra.* There is no majority opinion in *Coolidge* so holding. Moreover, the plurality opinion of the court stressed the fact that the vehicle searched was regularly parked in the driveway of the Coolidge home plainly visible from the street, and that the police had known for some time of the probable role of the car in the crime they were investigating. The opinion stated that by no possible stretch of the legal imagination could the situation be made into a case where it was not practical to secure a warrant. Here, on the other hand, the police, late at night, had just come upon defendant's parked car, a mobile vehicle. Based on the teletype they had received, there was a necessity for immediate action.

We next consider the alleged improper disclosure to the jury that defendant was wanted by the police of a neighboring community for armed robbery.[1] The disclosure came about during the testimony of Detective Falcone of the Belleville Police Department. The transcript of his testimony insofar as it relates to the matter under consideration is as follows:

Q Now, in what manner did it come to your attention at 5:30 the name of Anthony John La Porte?
A We received a teletype—
MR. HIGGINS: [Defense counsel] I'm going to object, your Honor, to these references.
THE COURT: No, I will permit it.
Q You received a teletype? A From Roselle Park. He was wanted for a holdup and robbery—
MR. HIGGINS: I object to that.

[1]Defendant has since been tried and convicted of this crime.

THE COURT: Strike that out and the jury will disregard it. As a result of the—

MR. HIGGINS: Your Honor, I move for a mistrial at this point.

THE COURT: Well, the motion is denied. We are trying to do our level best to contain this.

MR. HIGGINS: Your Honor, I made objections prior to this witness's testimony, and your Honor permitted him to go on, and I move for a mistrial again, your Honor.

THE COURT: The motion is denied. The jury is instructed to disregard the last statement made by this witness. It has nothing to do with this case and you will ignore it completely.

Falcone went on to testify that after defendant's car was located parked on Honiss Street in Belleville, he, Detective Natale and two officers from Roselle Park went there, arrested defendant and had the car towed to police headquarters where it was searched. This testimony was received without objection.

■ We conclude that it was proper for the State to show that defendant's resemblance to the description of the holdup man in the American Finance robbery was first noted while defendant was at Belleville Police Headquarters. But we find that it was improper to disclose the specific nature of the Roselle Park charge against defendant and the State's witness should have refrained from mentioning it.

■■ However, there is no indication that the error was anything but inadvertent. The trial judge immediately instructed the jury in the strongest terms to disregard the offending remark. Moreover, the evidence of defendant's guilt was so strong (the Appellate Division described it as "overwhelming evidence of guilt") that in the overall picture the error in question must be regarded as inconsequential and incapable of raising a reasonable doubt as to whether it "led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N. J.* 325, 336 (1971). Not every trial error in a criminal case requires a reversal of the conviction. If it is not of constitutional dimensions, it shall be disregarded by the appellate court "unless it is of such a nature as to have been clearly capable of producing an unjust re-

sult * * *." *R.* 2:10–2. In the framework of this case the error in question was not so capable. *State v. Neff,* 67 *N. J. Super.* 213 (App. Div. 1961).

The other trial error relied on by the Appellate Division as having prejudiced the jury's consideration of the case was the disclosure during trial that defendant had been arrested for embezzlement from a prior employer. The disclosure came about when the prosecutor was permitted, over objection, to ask two character witnesses who had testified to defendant's good reputation, if they were aware that defendant had been arrested for embezzlement from a former employer. Each witness answered in the negative.[2]

Apparently thereafter the trial court had *New Jersey Rules of Evidence, Rule* 47, particularly the last sentence thereof, called to its attention because at the close of the presentation of evidence, and prior to the summations by counsel, the court instructed the jury to "disregard completely" the reference to defendant's prior arrest for embezzlement. "It should not be considered by you or enter into your deliberations or affect the testimony of Miss Stotzer or Mr. Hodges with respect to his reputation in the community."

The State concedes that the cross-examination in question was contrary to *Evidence Rule* 47,[3] but argues that the error was harmless. Prior to 1967 it was permissible in this State to cross-examine a character witness, who had testified to a defendant's good reputation, as to whether he had heard rumors as to acts or conduct of a defendant or charges against him which would tend to negative such reputation. *State v. Steensen,* 35 *N. J. Super.* 103 (App. Div. 1955). The almost unanimous rule in this country permits such examination as a test of the character witness' credibility. 3A *Wigmore,*

---

[2] The fact of defendant's arrest on such a charge is conceded.

[3] The last sentence of *Rule* 47 reads "The credibility of a character witness testifying on behalf of the defendant may not be impaired by an inquiry into his knowledge of the defendant's alleged criminal conduct not evidenced by a conviction."

*Evidence* (Chadbourn Rev. 1970), § 988, p. 912, 913; *Michelson v. United States*, 335 *U. S.* 469, 69 S. Ct. 213, 93 *L. Ed.* 168 (1948).

However, the rule has been widely criticized because it permits the State to get before the jury rumors or charges of a defendant's misconduct under the guise of impeaching the credibility of his character witness. The potential for misuse by the jury was obvious. Accordingly, *Evidence Rule* 47, adopted in this State and effective September 11, 1967, modified the general rule by providing that the inquiry into a character witness' knowledge of a defendant's criminal conduct was to be limited to criminal conduct evidenced by a conviction.

The State's efforts to impeach defendant's character witnesses herein were contrary to *Evidence Rule* 47. However, as heretofore noted, it is the magnitude of the error and its potentiality to affect the jury verdict which determines whether or not it is reversible error.

Again, we are not dealing with error of constitutional dimensions. Indeed, as we have noted above, the cross-examination in question is allowed in most jurisdictions. *Wigmore, supra*. Also, when the change in the law of New Jersey was apparently called to the trial court's attention, it charged the jury to disregard completely the reference to defendant's arrest for embezzlement.

The practical consideration is whether the error was "clearly capable of producing an unjust result." *R.* 2:10–2. Was it sufficient to raise a reasonable doubt as to whether it led the jury to a result it otherwise might not have reached? *Macon, supra*, 57 *N. J.* at 335–336.

In light of the overwhelming evidence of defendant's guilt we conclude the error was inconsequential and clearly was not a factor in the jury verdict of guilt.

Even taking the aforesaid errors in the aggregate, we are satisfied that in all the circumstances they were harmless and did not render the trial unfair. See *State v. Orecchio*, 16 *N. J.* 125, 129 (1954).

We reverse the Appellate Division ruling and reinstate the judgment of conviction.

Justice Mountain and Judge Conford, while concurring in the Court's opinion in relation to the search issue, dissent from the judgment of reversal and would affirm the judgment of the Appellate Division for the reasons expressed in its opinion 122 *N. J. Super.* 522, 1972.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL, and Judges SULLIVAN and LEWIS—5.

*For affirmance*—Justice MOUNTAIN and Judge CONFORD —2.