UNITED STATES of America, Appellee,

v.

Delroy LEWIN, a/k/a Tony, Appellant.

UNITED STATES of America, Appellee,

v.

Oral Wayne TAYLOR, Appellant.

Nos. 88–2682, 88–2683.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.

Decided April 5, 1990.

James R. Hobbs and Bernard W. Dorsey, Kansas City, Mo., for appellants.

Thomas H. Newton, Kansas City, Mo., for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Delroy Lewin and Oral Wayne Taylor appeal from final judgments entered in the District Court[1] for the Western District of Missouri upon jury verdicts finding them guilty of various drug offenses. Lewin was found guilty of conspiracy to distribute crack in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), distribution of crack within 1,000 feet of a school in violation of 21 U.S.C. § 845a(a) and 18 U.S.C. § 2, and possession with intent to distribute crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The district court sentenced Lewin to a total of 97 months imprisonment, 6 years supervised release, a $5,000 fine, and a $150 special assessment. Taylor was found guilty of conspiracy to distribute crack in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and three counts of distribution of crack within 1,000 feet of a school in violation of 21 U.S.C. § 845a(a) and 18 U.S.C. § 2. The district court sentenced Taylor to a total of 97 months imprisonment, 6 years supervised release, a $5,000 fine, and a $200 special assessment.

For reversal Lewin and Taylor argue the district court erred in allowing the jurors to question witnesses. Taylor argues there was insufficient evidence to support his conviction for distributing crack within 1,000 feet of a school. Lewin argues the district court erred in denying his motion to suppress identification testimony and that he did not receive effective assistance of counsel. For the reasons discussed below, we affirm the judgments of the district court.

During April 1988 undercover police officers bought crack on several occasions from Lewin, Taylor, Michael G. Williams,[2] and others inside an apartment building located less than 1,000 feet from an elementary school in Kansas City, Missouri. On April 27, 1988, search warrants were executed for two apartments in the building and six individuals were arrested. The police took Polaroid photographs of the individuals arrested and used the photographs to compile a photo spread that was shown to the undercover officers. On April 28, 1988, the photo spread, which consisted of six photographs, was shown to the undercover officers involved in the investigation. The undercover officers were told that the photo spread contained the photographs of individuals who had been arrested at the apartments. The undercover officers could not see the backs of the photographs. One undercover officer identified the photographs of Williams and Lewin as the individuals involved in his crack buys. A second undercover officer identified the photographs of Williams and Taylor as the individuals involved in another crack transaction.

Williams, Lewin and Taylor were indicted and charged with various drug offenses. Lewin's pre-trial motion to suppress identification testimony was denied.[3] At the beginning of the trial, the district court informed the jurors that they would be allowed to ask questions of each witness after cross-examination. The district court instructed the jurors to direct their ques-

---

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

2. Williams was found guilty of conspiracy to distribute crack, 4 counts of distribution of crack within 1,000 feet of a school, and possession with intent to distribute crack. He was sentenced to a total of 97 months imprisonment, 6 years supervised release, a fine of $5,000, and a $300 special assessment. He did not appeal.

3. The Honorable Calvin K. Hamilton, Chief Magistrate, United States District Court for the Western District of Missouri.

tions, if any, to him orally in court. If the question was not improper, the district court would instruct the witness to answer; if the question was improper, the district court would instruct the witness not to answer. Lewin and Taylor objected to this procedure, but the district court overruled their objections. During the trial the jurors asked six questions, of which four were permitted to be answered. The jury found Williams, Lewin and Taylor guilty as charged. These appeals followed.

## JUROR QUESTIONS

Lewin and Taylor argue the district court should not have allowed the jurors to ask questions of the witnesses. They argue the practice of allowing juror questions was disruptive, invited speculation on the part of the jury and, more importantly, distorted the role of the jury in the adversarial process.

In the present case the jurors asked their questions orally. Objections were discussed at the bench, but within the presence of the jury. The jurors posed a total of six questions. The district court permitted four questions to be answered. One of the undercover officers was asked whether he was certain that Williams and Taylor were the individuals involved in the crack buys. The officer testified that he was "positive" about his identification. One of the officers who executed the search warrants was asked about the significance of the discovery of a Brillo pad in the apartment. The officer explained that Brillo pads are considered to be drug paraphernalia because small pieces of steel wool are often used as filters in pipes used to smoke crack. Another officer was asked whether the serial numbers of the money discovered during the search of the apartments and incident to arrest matched any of the serial numbers of the "buy" money. The officer testified that the serial numbers had been compared and did not match the "buy" money. The fourth question was posed to an expert witness who had testified about the distance from the apartment building to the school lot. A juror asked about the distance from the apartment building to the school building itself. The expert witness

answered that the distance between the apartment building and the school building was 990.9 feet.

The district court did not permit witnesses to answer two questions. One juror asked the principal of the elementary school whether any of the parents of the students had complained about drug activity near the school. The district court ruled that the question and answer were irrelevant. Another juror asked the expert witness about the 1,000 foot requirement in the schoolyard statute, 21 U.S.C. § 845a(a). The district court told the jury that the distance requirement would be covered in an instruction.

■ The author sees considerable merit in appellants' argument and does not condone the practice of inviting juror questions, much less permitting jurors to pose their questions, and requiring counsel to object, within the hearing of the other jurors. *See United States v. Johnson*, 892 F.2d 707, 711–15 (8th Cir.1989) (Lay, C.J., concurring) (juror questions are inherently prejudicial and may violate due process in criminal cases). However, this court has held that the practice of allowing juror questions is a matter within the discretion of the district court and is not prejudicial per se. *United States v. Land*, 877 F.2d 17, 19 (8th Cir.) (plain error), *cert. denied*, —— U.S. ——, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989), *citing DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir.1985), *and United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir.1986); *accord United States v. Callahan*, 588 F.2d 1078, 1086 (5th Cir.) (harmless error), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

■ We have carefully examined the record and hold that the district court did not abuse its discretion in allowing juror questioning in the present case. None of the juror questions was asked of any of the defendants. Such questioning is especially dangerous. *See United States v. Johnson*, 892 F.2d at 711–13 (Lay, C.J., concurring). The jurors asked only six questions, of which only four were permitted to be answered. This is not a case in which juror

questioning was allowed to become disruptive or abusive. The district court exercised control over the questions and refused to permit two questions to be answered, either because the question was irrelevant or involved an issue of law. The questions were relatively innocuous; they were specific and factual in nature. The questions sought clarification of previous testimony and did not introduce new or unrelated subject matter. Only the question about identification was repetitive, and the response was cumulative. However, we caution the district court that, if it decides to permit jurors to ask questions in future trials, it should consider requiring jurors to submit their questions in writing, or orally out of the presence of the other jurors, without prior discussion with the other jurors. *See United States v. Polowichak,* 783 F.2d at 413.

## SCHOOLYARD STATUTE

■ Taylor argues the district court erred in denying his motion for judgment of acquittal and in giving jury instruction No. 17. Both arguments involve the same issue. Taylor argues there was insufficient evidence to establish that he was involved in the distribution of crack within 1,000 feet of a school in violation of 21 U.S.C. § 845a(a). He argues the government failed to prove that he knew he was within 1,000 feet of a school. We disagree.

Title 21 U.S.C. § 845a(a) prohibits the distribution of controlled substances "in or on, or within one thousand feet of, the real property comprising a public or private elementary ... or secondary school." This court has held that proof of the fact that the defendant knew that the distribution occurred within the 1,000 foot zone is not required under 21 U.S.C. § 845a(a). *United States v. Haynes,* 881 F.2d 586, 590 (8th Cir.1989); *accord United States v. Holland,* 258 U.S.App.D.C. 236, 810 F.2d 1215, 1221–24, *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Falu,* 776 F.2d 46, 49–50 (2d Cir. 1985).

This construction of section 845a(a) does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement—one must *"knowingly* or *intentionally* ... distribute ... a controlled substance."* This distinguishes the schoolyard statute from [statutes in which the] failure to impose a *mens rea* requirement would "criminalize a broad range of apparently innocent conduct." Anyone who violates section 845a(a) knows that distribution of narcotics is illegal, although the violator may not know that the distribution occurred within 1,000 feet of a school. In this respect, the schoolyard statute resembles other federal criminal laws, which provide enhanced penalties or allow conviction for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware.

*United States v. Falu,* 776 F.2d at 50 (emphasis in original; citations omitted) (citing cases in which proof of knowledge of a particular fact is not required for conviction). Here, there was evidence on each schoolyard count that Taylor was involved in the distribution of crack within 1,000 feet of an elementary school. The government did not have to prove that Taylor knew that he was within the 1,000 foot zone.

## IDENTIFICATION TESTIMONY

In the present case the magistrate found that the out-of-court identification had been conducted in an impermissibly suggestive manner because, before viewing the photo spread, the undercover officers were informed that the photo spread contained the photographs of individuals who had been arrested at the apartments. *United States v. Williams,* No. 88–00108–01 & 03–CR–W–9, slip op. at 7 (W.D.Mo. July 20, 1988) (report and recommendation). The magistrate then considered whether, under the totality of the circumstances, the impermissibly suggestive manner in which the photo spread had been conducted created a very substantial likelihood of misidentification and concluded that it did not. *Id.* at 7–11. The magistrate concluded that both the out-of-court identification and the anticipated in-court identification were reliable be-

cause the undercover officer's observation of Lewin during the crack buys provided an independent basis for each identification. *Id.* at 10–11.

Lewin argues the district court erred in denying his motion to suppress certain identification testimony. Lewin argues the impermissibly suggestive, out-of-court identification tainted the undercover officer's in-court identification and undermined its reliability to such an extent that a very substantial likelihood of misidentification existed. Lewin challenges the accuracy of the undercover officer's in-court identification because the undercover officer did not refer to two of Lewin's distinctive facial features, a gold front tooth and a scar.

We disagree and hold the district court did not err in denying Lewin's motion to suppress certain identification testimony.

Due process challenges to convictions based on in-court identifications which follow a suggestive out-of-court [photographic identification procedure] are reviewed under a two-step test. The first step is to determine whether the challenged [photographic identification procedure] was "impermissibly suggestive." If so, the second inquiry is whether, under the totality of the circumstances of the case, the suggestive [identification] created "a very substantial likelihood of irreparable misidentification." This test reflects the fact that not all impermissibly suggestive [identifications] give rise to a very substantial likelihood of irreparable misidentification. Those identifications which are reliable—where the witness's perception of the suspect unaided by the suggestive [identification procedure] provided sufficient foundation for the identification—are admissible.

*United States v. Henderson,* 719 F.2d 934, 936 (8th Cir.1983) (citations omitted); *see Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972); *United States v. Love,* 692 F.2d 1147, 1151 (8th Cir.1980).

■ Telling the undercover officers that the photo spread contained the photographs of individuals who had been arrested at the apartments was impermissibly suggestive. Even though the photo spread was conducted in an impermissibly suggestive manner, we agree with the district court that, under the totality of the circumstances, the undercover officer's out-of-court and in-court identifications of Lewin were reliable. The undercover officer was trained to be observant and, as an undercover officer, had a strong incentive to pay attention. He had the opportunity to view Lewin for several minutes in a well-lit hallway during the course of two crack buys. The undercover officer identified the photograph of Lewin immediately and without hesitation one day after the crack buys. In addition, because the undercover officer viewed the photo spread and made his identifications before the other two undercover officers did, he was not influenced by them. The undercover officer testified that he did not notice Lewin's gold tooth because Lewin did not speak during the crack buys.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Lewin also argues he did not receive effective assistance of counsel at trial because his attorney allegedly failed to investigate, to discuss trial strategy, to challenge the validity of the search and arrest, and to make a challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Lewin's motion for appointment of new counsel on appeal was granted by this court. Appellate counsel notes that this issue was raised on appeal at Lewin's insistence. Lewin's claim of ineffective assistance of counsel is premature. "Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255.... This is so because normally such a claim cannot be advanced without the development of facts outside the original record." *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir.1978) (citations omitted); *accord United States v. Dubray,* 727 F.2d 771, 772 (8th Cir.1984) (per curiam).

Accordingly, the judgments of the district court are affirmed. The affirmance is without prejudice to Lewin's right to raise his ineffective assistance of counsel claim in a 28 U.S.C. § 2255 proceeding.