261 N.J. Super. 514 (1993)
619 A.2d 602
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUPERT JUMPP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1992.
Decided January 19, 1993.
*518 Before Judges MICHELS, BILDER and WALLACE.
Zulima V. Farber, Public Defender, attorney for appellant (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Ann S. Williams, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Rupert Jumpp was convicted of (1) purposely and knowingly murdering Patricia Thomas in violation of N.J.S.A. 2C:11-3a(1) and (2) (First Count); (2) possession of a knife under circumstances not manifestly appropriate for such lawful uses as it may have in violation of N.J.S.A. 2C:39-5d (Second Count), and (3) possession of a knife with a purpose to use it unlawfully against the person of another in violation of N.J.S.A. 2C:39-4d (Third Count). The trial court merged defendant's convictions for unlawful possession of a knife under circumstances not manifestly appropriate for such lawful uses as it may have under the Second Count and unlawful possession of a knife with a purpose to use it unlawfully against the person of another under the Third Count into his conviction for murder under the First Count and committed defendant to the custody of the Commissioner of the Department of Corrections for life with a thirty year period of parole ineligibility and assessed a $30 Violent Crimes Compensation Board penalty. Defendant appeals.
Defendant seeks a reversal of his convictions and a new trial on the following grounds set forth in his brief:

*519 I. THE TRIAL COURT'S REFUSAL TO CHARGE PASSION/PROVOCATION MANSLAUGHTER DENIED THE DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST.AMENDS. V, VI, XIV; N.J. CONST. (1947) ART. I, PARS. 9, 10.
II. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED JURORS TO TAKE NOTES AND QUESTION WITNESSES DURING THE COURSE OF THE TRIAL.
A. It Was Reversible Error To Allow The Jurors To Take Notes.
B. It Was Reversible Error For The Trial Court To Allow The Jurors To Question The Witnesses.
III. THE TRIAL COURT'S FACTUAL FINDINGS WERE ERRONEOUS. ALL OF DEFENDANT'S STATEMENTS WERE INVOLUNTARY AND THEIR ADMISSION INTO EVIDENCE VIOLATES DUE PROCESS OF LAW AND DEFENDANT'S PRIVILEGE AGAINST SELF-INCRIMINATION. U.S. CONST.AMENDS. V, XIV; N.J. CONST. (1947), ART. I, PAR. 1.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment is appropriate with respect to some of the contentions.

I.
Defendant first contends that the trial court's refusal to charge passion/provocation manslaughter denied him a fair trial and requires a reversal of his murder conviction. At the close of all the evidence, the trial court informed counsel that it would charge the jury as to murder, aggravated manslaughter and reckless manslaughter. Defendant requested that the trial court also charge as to passion/provocation manslaughter. The trial court denied the request because it was satisfied that there was no evidence to support such a charge. Defendant argues that there was sufficient evidence of provocation to warrant a passion/provocation manslaughter charge because two days before the stabbing, the victim was told by her sister that defendant had made sexual advances toward her and that he had argued with the victim about her calling his mother and telling her lies. According to defendant, this, coupled with his statement that the stabbing occurred during a "heated argument" *520 and "blew out of proportion," presented a rational basis on which to convict him of passion/provocation manslaughter. We disagree.
The applicable test for determining whether a jury should be charged with respect to an included offense is set forth in N.J.S.A. 2C:1-8e of the New Jersey Code of Criminal Justice (Code), which reads as follows:
The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense. [N.J.S.A. 2C:1-8e].
Where there is a rational basis in the evidence to find defendant guilty of an included offense and not guilty of the encompassing offense, it is reversible error for the trial court to refuse, upon request, to charge as to the included offense. See State v. Crisantos, 102 N.J. 265, 278, 508 A.2d 167 (1986); State v. Choice, 98 N.J. 295, 298-99, 486 A.2d 833 (1985); State v. Powell, 84 N.J. 305, 316 n. 12, 419 A.2d 406 (1980); State v. Hollander, 201 N.J. Super. 453, 473-74, 493 A.2d 563 (App. Div.), certif. denied, 101 N.J. 335, 501 A.2d 983 (1985). Under the Code, however, the "scintilla of evidence" standard advocated in State v. Powell, supra, 84 N.J. at 316 n. 12, 419 A.2d 406, is no longer controlling. In State v. Crisantos, the Supreme Court emphasized that the Code formulation of the rational-basis test is somewhat more restrictive than the pre-Code guidelines in State v. Powell, pointing out that:
[U]nder our Code it is improper for a trial court to charge manslaughter, even when requested by the defendant, if there is no evidence in the record to support a manslaughter conviction. Cf. State v. Powell, supra, 84 N.J. at 316 n. 12 [, 419 A.2d 406] (pre-Code). [State v. Crisantos, supra, 102 N.J. at 276[, 508 A.2d 167]].
Applying these principles here, the trial court properly refused to instruct the jury with respect to passion/provocation manslaughter. The relevant portion of the Code, N.J.S.A. 2C:11-4, provides in pertinent part:
Manslaughter
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.

*521 b. Criminal homicide constitutes manslaughter when:
(1) It is committed recklessly;
(2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation....
The offense of passion/provocation manslaughter referred to in N.J.S.A. 2C:11-4b(2) has four elements: "the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411, 568 A.2d 879 (1990) (citing 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.10, at 255 (1986)); see State v. Darrian, 255 N.J. Super. 435, 447, 605 A.2d 716 (App.Div.), certif. denied, 130 N.J. 13, 611 A.2d 651 (1992). The first two of these elements are objective, the latter two are subjective. State v. Mauricio, supra, 117 N.J. at 411, 568 A.2d 879; State v. Darrian, supra, 255 N.J. Super. at 447, 605 A.2d 716. Unless all four elements are established, passion/provocation manslaughter cannot be demonstrated, and, therefore, cannot be charged to the jury.
Defendant cannot satisfy the first element of passion/provocation manslaughter  adequate provocation. At common-law, the offense of passion/provocation manslaughter, a lesser-included offense to murder, developed as "a concession to the frailty of man, a recognition that the average person can understandably react violently to a sufficient wrong and hence some lesser punishment is appropriate." State v. Crisantos, supra, 102 N.J. at 274, 508 A.2d 167 (quoting State v. Guido, 40 N.J. 191, 209-210, 191 A.2d 45 (1963)). This concept recognizes that "a reasonable man who has thus lost control over himself would not kill, yet his homicidal reaction to the provocation is at least understandable." State v. Mauricio, supra, 117 N.J. at 410, 568 A.2d 879 (quoting 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.10, at 256 (1986)). Our Supreme Court has discussed the objective evaluation of alleged provocation:

*522 The first of the foregoing requirements is that the provocation be adequate. That test is purely objective, because the provocation must be "sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control." State v. King, 37 N.J. 285, 301-02[, 181 A.2d 158] (1962) (quoting State v. Herrmann, 77 N.J.L. 534, 535[, 76 A. 1086] (E. & A. 1909)). The provocation must be severe enough that the "intentional homicide may be as much attributable to the extraordinary nature of the situation as to the moral depravity of the actor." Model Penal Code § 210.3, comment. [State v. Mauricio, supra, 117 N.J. at 412[, 568 A.2d 879].
Stated somewhat differently, "[t]he question of whether provocation is adequate essentially amounts to whether loss of self-control is a reasonable reaction." Id.
Here, defendant's loss of self-control and his stabbing the victim, was not a reasonable reaction to adequate provocation. In his written statement, defendant explained why he stabbed the victim:
Q. Why did you stab her?
A. Me and her like, I'm saying. I have no reason. Me and her were arguing.
Q. What were you arguing about?
A. We were talking about bettering myself. The argument blew out of proportion. Then I took the knife and stabbed her.
Absolutely nothing in this statement demonstrates reasonable provocation. If anything, the statement proves that defendant acted unreasonably. Defendant may have been upset with the victim because she may have lied to his mother, and he may have somehow been affected by the fact that the victim had found out that he had made sexual advances toward her sister. However, defendant's statement does not contain even a hint that he and the victim were arguing about these subjects before he stabbed her. Beyond this, even assuming that defendant and the victim were arguing about these subjects prior to his stabbing her, this does not constitute adequate provocation. Words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter. State v. Mauricio supra, 117 N.J. at 413, 568 A.2d 879; State v. Crisantos, supra, 102 N.J. at 274, 508 A.2d 167. Likewise, sexual rejection by a paramour does not constitute adequate provocation. State v. McClain, 248 N.J. Super. 409, *523 419, 591 A.2d 652 (App.Div.), certif. denied, 126 N.J. 341, 598 A.2d 897 (1991); State v. Hollander, supra, 201 N.J. Super. at 474-75, 493 A.2d 563. And, there was no evidence in this case of a continuing course of ill-treatment in the relationship between defendant and the victim that caused a "detonating force" to accumulate that would constitute adequate provocation when coupled with the events leading up to the killing on the evening in question. See, e.g., State v. Erazo, 126 N.J. 112, 124-25, 594 A.2d 232 (1991); State v. Coyle, 119 N.J. 194, 224-26, 574 A.2d 951 (1990); State v. Guido, 40 N.J. 191, 211, 191 A.2d 45 (1963).
In sum, the evidence, when viewed most favorably to defendant, does not provide a basis for a jury to rationally conclude that the asserted provocation was sufficient to inflame the passion of a reasonable person. A reasonable person would not lose control and resort to deadly force in the circumstances presented here. Consequently, there was no basis in the evidence for the trial court to charge the jury as to passion/provocation manslaughter. See State v. Purnell, 126 N.J. 518, 542, 601 A.2d 175 (1992); State v. Perry, 124 N.J. 128, 159-60, 590 A.2d 624 (1991); State v. Oglesby, 122 N.J. 522, 536, 585 A.2d 916 (1991).

II.
Defendant also contends that the trial court erred by permitting the jurors to take notes during the trial, thereby committing reversible error. Defendant essentially urges us to impose a per se ban on juror note-taking in criminal cases because of risks inherent in such practice, including the impossibility of determining whether such notes were improperly used during deliberations.
The majority of jurisdictions accord general approval to the practice of juror note-taking in criminal cases and vest the trial court with discretion to permit the same. See, e.g., United States v. Oppon, 863 F.2d 141, 148 (1st Cir.1988); United *524 States v. Polowichak, 783 F.2d 410, 413 (4th Cir.1986); United States v. Rhodes, 631 F.2d 43, 45-46 (5th Cir.1980); United States v. Johnson, 584 F.2d 148, 157-58 (6th Cir.1978); United States v. Maclean, 578 F.2d 64, 65-66 (3d Cir.1978); United States v. Anthony, 565 F.2d 533, 536 (8th Cir.1977); United States v. Riebold, 557 F.2d 697, 705-06 (10th Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); United States v. Braverman, 522 F.2d 218, 224 (7th Cir.1975); United States v. Bertolotti, 529 F.2d 149, 159-60 (2d Cir.1975); Howard v. State, 583 P.2d 827, 835 n. 19 (Alaska 1978); People v. Ellinger, 754 P.2d 396, 397 (Colo.Ct.App. 1987); Kelley v. State, 486 So.2d 578, 583 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Holcomb v. State, 130 Ga. App. 154, 202 S.E.2d 529, 532 (1973); Huffman v. State, 543 N.E.2d 360, 376 (Ind. 1989), overruled on other grounds, Street v. State, 567 N.E.2d 102 (Ind. 1991); Travis v. Commonwealth, 457 S.W.2d 481, 482 (Ky. 1970); People v. Young, 146 Mich. App. 337, 379 N.W.2d 491, 492-93 (1985); People v. DiLuca, 85 A.D.2d 439, 448 N.Y.S.2d 730, 734-35 (N.Y. App. Div. 1982); State v. Ward, 286 N.C. 304, 210 S.E.2d 407, 412-13 (1974), judgment vacated in part, 428 U.S. 903, 96 S.Ct. 3206, 49 L.Ed.2d 1207 (1976); Brown v. State, 3 Tenn. Crim. App. 678, 466 S.W.2d 527, 529 (1971); Smith v. State, 773 P.2d 139, 144 (Wyo. 1989); see also Annotation, "Taking and Use of Trial Notes by Jury," 14 A.L.R.3d 831 (1967 & Supp. 1992); 75B Am.Jur.2d Trial § 1620 (1992); 23A C.J.S. Criminal Law §§ 1370-1371 (1989). But see State v. Ledet, 298 So.2d 761, 767 (La. 1974); State v. Johnson, 632 S.W.2d 43, 45 (Mo. Ct. App. 1982); Commonwealth v. Pierce, 453 Pa. 319, 309 A.2d 371, 372-73 (1973).
In New Jersey, Wigler v. Newark, 125 N.J. Super. 179, 309 A.2d 897 (1973), certif. denied, 64 N.J. 490, 317 A.2d 703 (1974), appears to be the only reported decision addressing the issue of juror note-taking, and that was in the context of a civil, not a criminal, case. There, after the jury had begun its deliberations, it was discovered that during the trial court's supplemental *525 instruction regarding an inventory list of over twenty items with a value ascribed to each, one juror had apparently made notes of the list on an envelope. The defendant contended that this constituted reversible error. Noting that the practice of juror note-taking was not barred by any New Jersey statute, court rule or prior decision, we first discussed the negative effect of note-taking:
The reasons advanced against this practice include the contention that the taking of notes by a juror may tend to distract his mind from the evidence which is being presented while he is taking notes; may distract the attention of other jurors from consideration of the evidence being presented; may tend to overemphasize either to himself or to other jurors the evidence on which he is taking notes; further, that the taking of notes might tend to be a confusing element for those jurors not trained or skilled in the note-taking process. Thornton v. Weaber, 380 Pa. 590, 112 A.2d 344 (Sup.Ct. 1955); Corbin v. Cleveland, 144 Ohio St. 32, 56 N.E.2d 214 (Sup.Ct. 1944). [Wigler v. Newark, supra, 125 N.J. Super. at 182-83, 309 A.2d 897].
However, we then generally approved the practice, stating:
During the trial of a case the judge, counsel and the court reporter are all busily engaged in taking notes. It is incongruous to expect only the jury to have the evidence, as it is given, indelibly inscribed on the "tablets of their memory." Counsel would hardly urge as error, in a case tried by a judge without a jury, the fact that the trial judge took notes. The majority and better view is that in the absence of statute the matter of note-taking by jurors rests largely within the discretion of the trial judge. United States v. Campbell, 138 F. Supp. 344 (N.D.Iowa 1956); United States v. Standard Oil Company, 316 F.2d 884, 897 (7 Cir. 1963); Watkins v. State, 216 Tenn. 545, 393 S.W.2d 141 (Sup.Ct. 1965). See Annotation, "Taking and Use of Trial Notes by Jury," 14 A.L.R.3d 831 (1967).

As a general rule we see nothing improper in a juror taking notes during the course of trial. The trial judge has discretion to determine in the first instance if the case lends itself to the practice and to exercise control and direction over the manner in which jurors exercise the right. [Wigler v. Newark, supra, 125 N.J. Super. at 183 [, 309 A.2d 897] (emphasis added)].
See also Pressler, Current N.J. Court Rules, comment on R. 1:8-8 (1993).
Finally, in Wigler v. Newark, supra, 125 N.J. Super. at 183-84, 309 A.2d 897, we concluded that there was no error in the single juror taking notes to assist his memory. We emphasized that the note-taking occurred while the trial court was recharging the jury as to a list of the values of over twenty items and *526 that there was no dispute as to the items or their amounts. A list of such items of damages could have been prepared by either counsel or the court for the jury to take to the jury room pursuant to R. 1:8-8. Further, we noted that defendant offered "no evidence of confusion, distraction, or prejudice." Id. at 183, 309 A.2d 897.
In May 1988, our Supreme Court approved the practice of juror note-taking in certain complex civil cases. See Chief Justice's Report on Civil Jury Procedures, 121 N.J.L.J. 874 (1988) [hereinafter Chief Justice's Report]. This report, which was based upon the recommendations of the Supreme Court Committee on Civil Case Management and Procedures, set forth several procedures that "may be used as the trial judge deems appropriate." Id. The report authorized juror note-taking "in appropriate cases" and explained that "[i]n cases with complicated fact patterns or in multiple-issue cases (such as construction litigation which might have hundreds of sub-claims), jurors may be more effective if they are able to organize their thoughts as the facts are presented or the claims are made." Id.
Defendant asserts that the Chief Justice's Report was intended to apply only to civil cases and that "[n]othing in it even hinted that this procedure would be appropriate in a criminal case." However, the fact that the report does not deal with criminal cases does not demonstrate the Supreme Court's intention to prohibit juror note-taking in criminal cases. Indeed, the gravamen of the Chief Justice's Report was that in certain cases the practice of juror note-taking is an acceptable and beneficial practice. In light of the general approval of juror note-taking in other jurisdictions, an arbitrary distinction should not be drawn to bar jurors in criminal cases in this State from availing themselves of the same generally accepted practice.
In sum, the general approval of the practice of juror note-taking and the placement of the decision to authorize same within the discretion of the trial court represents the better rule *527 and Wigler v. Newark, supra, 125 N.J. Super. 179, 309 A.2d 897, should be interpreted to authorize juror note-taking in appropriate criminal cases. However, such authorization of juror note-taking should not be interpreted as authorizing the practice in every criminal case as a matter of routine. In giving the trial court discretion to allow note-taking, we specifically emphasized in Wigler v. Newark, supra, 125 N.J. Super. at 183, 309 A.2d 897, that part of this discretion is "to determine in the first instance if the case lends itself to the practice...."
The record here indicates that the trial court apparently follows a general practice of allowing jurors to take notes in every case. The trial court stated that juror note-taking "is common practice and has been for decades throughout the United States." Such automatic authorization of juror note-taking is improper, and such practice should not be routinely employed in every case. Moreover, the trial court should have set forth on the record the precise reasons why the practice of juror note-taking was beneficial in light of the factual and legal issues to be presented at trial. Nonetheless, the record does not reveal, and defendant has not demonstrated, any prejudice produced by allowing the jurors to take notes in this case. There is simply no evidence of confusion, distraction or prejudice caused by juror note-taking in this case which would warrant a reversal of defendant's convictions.
Furthermore, the trial court followed generally the recommendations for charging a jury concerning juror note-taking set forth in the Chief Justice's Report and thereby obviated any possible prejudice caused by allowing the jurors to take notes. The trial court properly instructed the jurors that their notes are not in evidence and should be used only to refresh their recollection of the testimony and that the notes should not take precedence over each juror's independent recollection of the testimony presented. See United States v. Polowichak, supra, 783 F.2d at 413; United States v. Rhodes, supra, 631 F.2d at *528 45-46; United States v. Maclean, supra, 578 F.2d at 66-67; United States v. Bertolotti, supra, 529 F.2d at 160. The trial court also instructed the jurors that they should listen to the evidence carefully and not allow their note-taking to distract them. See United States v. Rhodes, supra, 631 F.2d at 46. Thus, the trial court's general instructions to the jury concerning note-taking, both at the commencement of the trial and at the end of the evidence, adequately addressed the possible negative effects of note-taking by the jurors.
Beyond this, the proof of defendant's guilt was overwhelming and there was no real possibility that allowing the jurors to take notes led the jury to a result it otherwise might not have reached. State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971). Certainly, in the context of this case, the juror note-taking was harmless beyond a reasonable doubt and was not "clearly capable of producing an unjust result." Ibid.; see State v. Lair, 62 N.J. 388, 392, 301 A.2d 748 (1973); State v. La Porte, 62 N.J. 312, 318-19, 301 A.2d 146 (1973); State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); see also R. 2:10-2.

III.
Defendant also contends that the trial court erred when it advised the jurors on its own initiative over objection that they could propound questions to the witnesses. During the trial, the jury submitted only one question, which was addressed to Sergeant Winowski:
THE COURT: The question is, "When he [defendant] stated his name to you did he give you a reason why he was turning himself in?" Did he just say, "I come to turn myself in?" what happened?
THE WITNESS: He just stated, "I am turning myself in." At that point 
THE COURT: That's all. Is that all he said?
THE WITNESS: That's all.
THE COURT: Other than giving you his name and address?
THE WITNESS: Yes.
This question from the jury was somewhat duplicative of testimony by Sergeant Winowski during direct examination:

*529 Q. How was it that you first saw [defendant]?
A. He had come in the front door of headquarters, I had come out of the communications section and asked him if I could help him at which point he stated, "I came to turn myself in," and I asked him what his name was. He stated Rupert Jumpp. At that time I placed him in custody and brought him to the detention area in the rear of headquarters.
Defendant argues that permitting the jury to propound a question, which was duplicative of testimony already in the case, was damaging to him because "it clearly indicates a consciousness of guilt on the part of the defendant" and the jury should not have been allowed to hear the same testimony twice. Defendant claims that "[i]n such a context, the allowance of the juror's question was substantial error." We disagree.
There is no case law, court rule or statute in this State precisely addressing the propriety of jurors propounding questions to the witnesses. Other jurisdictions, however, have generally approved this practice and found that the trial court has discretion to authorize it. See, e.g., United States v. Johnson, 914 F.2d 136, 138 (8th Cir.1990); United States v. Lewin, 900 F.2d 145, 147 (8th Cir.1990); United States v. Nivica, 887 F.2d 1110, 1123 (1st Cir.1989), cert. denied, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990); United States v. Land, 877 F.2d 17, 19 (8th Cir.), cert. denied, 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989); State v. LeMaster, 137 Ariz. 159, 669 P.2d 592, 597 (Ariz. Ct. App. 1983); Nelson v. State, 257 Ark. 1, 513 S.W.2d 496, 498 (1974); Scheel v. State, 350 So.2d 1120, 1121 (Fla. Dist. Ct. App. 1977); People v. Heard, 388 Mich. 182, 200 N.W.2d 73, 76 (1972); State v. Rodriguez, 107 N.M. 611, 762 P.2d 898, 901 (N.M.Ct.App.), cert. denied, 107 N.M. 546, 761 P.2d 424 (1988); see also Annotation, "Propriety of Jurors Asking Questions in Open Court During Course of Trial," 31 A.L.R.3d 872 (1970 & Supp. 1992); 75B Am.Jur.2d Trial § 1624 (1992). But see United States v. Polowichak, supra, 783 F.2d at 413; People v. McAlister, 167 Cal. App.3d 633, 645, 213 Cal. Rptr. 271, 277 (Cal.Ct.App. 1985); State v. Williamson, 247 Ga. 685, 279 S.E.2d 203, 204 (1981); State v. *530 Zima, 237 Neb. 952, 468 N.W.2d 377, 380 (1991); Branch v. State, 4 Tenn. Crim. App. 164, 469 S.W.2d 533, 534 (1969).
Even those cases expressly discouraging juror questioning of witnesses nonetheless recognize that, ordinarily, the decision whether to allow such a practice is within the trial court's discretion. See DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 516 (4th Cir.1985); Cheeks v. State, 266 Ind. 190, 361 N.E.2d 906, 910 (1977); Lucas v. State, 381 So.2d 140, 144-45 (Miss. 1980). In general, the practice is no longer considered prejudicial, per se, to defendant, see United States v. Lewin, supra, 900 F.2d at 147; United States v. Land, supra, 877 F.2d at 19, and allowing jurors to question witnesses is not reversible error unless defendant can show some prejudice from the use of the practice. United States v. Johnson, supra, 914 F.2d at 138-39; United States v. Land, supra, 877 F.2d at 19; DeBenedetto v. Good Year Tire & Rubber Co., supra, 754 F.2d at 517.
There are, of course, dangers inherent in permitting jurors to question witnesses, which include:
(1) that counsel is placed in the intolerable position of either offending the juror by objecting or permitting improper and possibly prejudicial testimony to come in without objection; (2) the involvement of the juror in the process of interrogation may lessen his or her objectivity and cause a premature judgment on some issues in the case; and (3) personal interaction between juror and witness may produce tension or actual antagonism in the juror. [75B Am. Jur.2d Trial § 1624 (1992)].
Additionally, there is the potential that the jury might abandon its role as arbiter of the facts and become an inquisitor, demanding that defendant justify himself. United States v. Johnson, 892 F.2d 707, 715 (8th Cir.1989) (Lay, C.J., concurring).
Perhaps the most thoughtful discussion of the propriety of juror questioning of witnesses is set forth by the United States Court of Appeals for the Fourth Circuit in DeBenedetto v. Good Year Tire & Rubber Co., supra, 754 F.2d at 516, where the Court recognized that the decision to allow juror questioning *531 of witnesses lies within the discretion of the trial court, but emphasized that the practice is "fraught with dangers which can undermine the orderly progress of the trial to verdict." The Court explained:
While we agree that allowing juror questions is a matter within the discretion of the trial court, we do not agree that such questions are analogous to or even comparable to questioning of witnesses by the judge. Suffice it to say that the judge is not "an umpire or ... moderator at a town meeting," but he sits "to see that justice is done in the cases heard before him." United States v. Rosenberg, 195 F.2d 583, 594 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952), quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941). One simply cannot compare the questioning by the trial judge  who is trained in the law and instructed to "see that justice is done"  with the questioning by members of the jury  who are untutored in the law, and instructed to sit as a neutral fact-finding body. Thus, we believe that juror questioning and questioning by the trial judge are clearly and properly distinguishable, although both forms of questioning are matters within the trial court's discretion.
Notwithstanding our belief that juror questioning is a matter within the trial court's discretion, we believe that the practice of juror questioning is fraught with dangers which can undermine the orderly progress of the trial to verdict. Our judicial system is founded upon the presence of a body constituted as a neutral factfinder to discern the truth from the positions presented by the adverse parties. The law of evidence has as its purpose the provision of a set of rules by which only relevant and admissible evidence is put before that neutral factfinder. Individuals not trained in the law cannot be expected to know and understand what is legally relevant, and perhaps more importantly, what is legally admissible.
Since jurors generally are not trained in the law, the potential risk that a juror question will be improper or prejudicial is simply greater than a trial court should take, absent such compelling circumstances as will justify the exercise of that judicial discretion set out above.
While the procedure utilized in the trial below permitted screening of the questions before an answer was given, the statement of the question itself was in the hearing of the other jurors, bringing with it the unknown, and perhaps unknowable, mental reactions of those other jurors. In the case where such a question is rejected, not only the questioning juror but the other jurors are likely to retain whatever mind-set has been generated by the question, leaving the court and counsel to ponder, under the stress of trial, how much influence a juror question, answered or unanswered, may have had on the perceptions of the jury as a whole. [DeBenedetto v. Goodyear Tire & Rubber Co., supra, 754 F.2d at 516].
The risks inherent in juror questioning of witnesses, however, can be held to a minimum by implementing certain *532 procedures. For example, the trial court "should require jurors to submit questions in writing, without disclosing the question to other jurors, whereupon the court may pose the question in its original or restated form upon ruling the question or the substance of the question proper." United States v. Polowichak, supra, 783 F.2d at 413; State v. Lewin, supra, 900 F.2d at 148; see 75B Am.Jur.2d Trial § 1625 (1992); see also Chief Justice's Report, supra, 121 N.J.L.J. at 874 (requiring all juror questions regarding the charge to be submitted in writing to the court and noting that "[t]o permit oral questions, which in turn could lead to colloquy, might well increase the likelihood of reversible error."). Additionally, juror questions should be asked only after the examination of a witness is complete and counsel should be permitted to re-examine the witness after the juror questions. See United States v. Johnson, supra, 914 F.2d at 138. Counsel also should be given the opportunity, if desired, to object to the juror questions out of the presence of the jury. See Cheeks v. State, supra, 266 Ind. 190, 361 N.E.2d at 910. Procedures of this nature tend to reduce the inherent dangers involved in questioning of witnesses by jurors and permit the trial court to retain control of the proceedings. 75B Am.Jur.2d Trial § 1625 (1992). Nonetheless, there is a real question as to whether or not such procedures are truly effective. In this regard, we deem it appropriate to reiterate the Fourth Circuit's observations in DeBenedetto v. Good Year Tire & Rubber Co., supra, 754 F.2d at 516-17, where it was stated:
One further aspect of this practice deserves comment. Human nature being what it is, one or two jurors often will be stronger than the other jurors, and will dominate the jury inquiries. Indeed, this appears to have happened in this case, as discussed infra. Moreover, since these questions are from one or more jurors, the possibility that the jury will attach more significance to the answers to these jury questions is great. Every trial judge has noted the development in most lengthy trials of a cohesiveness in the jury as the trial goes on, coming eventually almost to a spirit of camaraderie, in which the actions and reactions of any individual juror are perceived by the jurors as those of the whole jury. In such a setting, the individual juror's question, and the answer elicited, almost certainly will take on a stronger significance to the jury than those questions and answers presented and received in the normal adversarial way.

*533 To the extent that such juror questions reflect consideration of the evidence  and such questions inevitably must do so  then, at the least, the questioning juror has begun the deliberating process with his fellow jurors. Certainly, this is not by design, but stating the question and receiving the answer in the hearing of the remaining jurors begins the reasoning process in the minds of the jurors, stimulates further questions among the jurors, whether asked or not, and generally affects the deliberative process.
With these principles and concerns in mind, we examined the record to determine whether defendant was prejudiced by the juror's question. We find no prejudice in this case. At the outset of the trial, the trial court informed the jurors that they could proffer questions for witnesses, explaining:
[When] all the lawyers have finished with their questioning of the witness, if there remains some point of fact that you're unclear on you can write the question down and submit it to me and I will consider it with Counsel and if it's a proper question then I will ask it. If not I will explain to you why it is not a proper question.
Generally we leave the questioning of the witnesses to the lawyers. Occasionally you may hear me ask a question and occasionally you may ask a question. Don't feel any obligation to do so. If you have something that you want to ask, just write it out and I will consider it.
During the course of the trial, the jury asked only one question, which was addressed to Sergeant Winowski regarding what defendant had said when he initially arrived at the police station. The trial court then gave defense counsel the opportunity to object at side bar to this question, but counsel did not do so. Defense counsel was also given the opportunity to re-examine the witness. This was not a case where juror questioning was permitted to become abusive or disruptive  one question was submitted by the jury and was asked only after screening by the trial court and counsel. Thus, the trial court retained control over the process.
Additionally, the one question asked was relatively innocuous, specific and factual in nature. The question merely sought further detail as to previous testimony and did not introduce any new or unrelated subject matter. The fact that the juror's question was somewhat repetitive and the response cumulative did not cause any prejudice to defendant. See United States v. Lewin, supra, 900 F.2d at 147-48.
*534 Beyond this, even assuming that juror questioning of the witnesses should not have been permitted, the error was harmless beyond a reasonable doubt. It was not "clearly capable of producing an unjust result." See State v. Lair, supra, 62 N.J. at 392, 301 A.2d 748; State v. La Porte, supra, 62 N.J. at 318-19, 301 A.2d 146; State v. Hock, supra, 54 N.J. at 538, 257 A.2d 699; see also R. 2:10-2. The proof of defendant's guilt was overwhelming and there was no real possibility that any error in this regard "led the jury to a result it otherwise might not have reached." State v. Macon, supra, 57 N.J. at 336, 273 A.2d 1.
Although we find no error in the trial court's permitting juror questioning of the witness in this case, we do not endorse the practice because the inherent dangers are considerable. We direct, therefore, that trial courts withhold implementing such practice until the Supreme Court has had an opportunity to thoroughly consider this issue to determine whether jurors should be permitted to question witnesses and, if so, establish precise guidelines and procedures.

IV.
Finally, we are satisfied from our study of the record that there was sufficient credible evidence in the record as a whole to support the findings and conclusions of the trial court that the State had established beyond a reasonable doubt that defendant's written statement was voluntary and that the appropriate Miranda[1] warnings had been given to him. We find no sound reason or justification for disturbing them. See State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964); see also State v. Kennedy, 97 N.J. 278, 287, 478 A.2d 723 (1984); Leimgruber v. Claridge Assocs., Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
*535 According to the State's proofs, contrary to defendant's claim, defendant was not beaten or coerced into signing his confession. Sergeant Winowski, the desk sergeant who arrested defendant, testified that he did not see anyone strike defendant. Detective Milmoe, who observed defendant in the detention area after the first alleged beating and who allegedly witnessed the second beating, also testified that he did not see any police officers beating defendant with baseball bats. Moreover, Detective Milmoe testified that he did not see cuts or swelling or any evidence that defendant had been struck and that no one beat defendant in his presence. The detective did not see any police officers strike defendant with a book, beat defendant around his upper body with baseball bats or threaten to send defendant back to Jamaica on a boat.
Furthermore, according to the medical admission sheet prepared by Thomas Dargon, a nurse employed by the Essex County Jail, defendant did not have any indication of injury upon his admission to the jail. Dargon watched defendant shower and then interviewed him. There was no indication that defendant exhibited any rash, wounds or bandages. Dargon testified that if he had observed any wounds or bruises, he would have recorded these on defendant's medical admission sheet. Additionally, the photograph of defendant taken upon his admission to the Essex County Jail contained no indicia that defendant had been beaten. And, the trial court stated on the record that the Sheriff's Department photograph taken the morning after the alleged beating "shows absolutely no indication of any injury, shows a man who looks relaxed and calm and certainly not somebody who had been repeatedly beaten in various places with baseball bats and books and so on."
In sum, the record supports the trial court's findings and conclusions that defendant was properly apprised of his Miranda rights and made a voluntary, knowing and intelligent waiver of same, see Miranda v. Arizona, supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707; State v. Gerald, 113 N.J. 40, 117-18, 549 A.2d 792 (1988); State v. Bey, 112 N.J. 123, *536 134, 548 A.2d 887 (1988), and that there was no evidence that defendant was beaten by the police and coerced into signing the written statement. Consequently, the trial court properly rejected defendant's challenge to the admissibility of his written statement.

V.
Accordingly, the judgment of conviction and order for commitment under review are affirmed.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).